Robert S. Arns, State Bar No. 65071 (rsa@arnslaw.com)
Jonathan E. Davis, State Bar No. 191346 (jed@arnslaw.com)
Shounak S. Dharap, State Bar No. 311557 (ssd@arnslaw.com)
**THE ARNS LAW FIRM**
A Professional Corporation
515 Folsom St., 3rd Floor
San Francisco, CA 94109
Tel: (415) 495-7800
Fax: (415) 495-7888

Attorneys for Plaintiffs

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHARLOTTE HORNE, WILBERT HORNE, JAMES GEHRKE, RUTH GEHRKE, BARBARA ZOELLNER, CHARLES T. WALTER, JR., PATRICIA HEALEY, and GARY GOODRICH, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>ENVIRONMENTAL CHEMICAL CORPORATION, dba ECC REMEDIATION SERVICES; TETRA TECH, INC..; and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. 18-cv-07181-DMR<br><br>**UPDATED JOINT CASE MANAGEMENT CONFERENCE STATEMENT**<br><br>Courtroom 4 – 3rd Floor<br>**Judge**: Hon. Donna Ryu<br>**Date**: August 29, 2019<br>**Time:** 1:00 p.m. |

Plaintiffs Charlotte Horne, Wilbert Horne, James Gehrke, Ruth Gehrke, Barbara Zoellner, Charles T. Walter, Jr., Patricia Healey, and Gary Goodrich, on behalf of themselves and all others similarly situated (Plaintiffs), and Defendants Tetra Tech, Inc. ("Tetra Tech") and Environmental Chemical Corporation ("ECC") hereby submit this Joint Case Management Statement.

**1. Jurisdiction and Service**

There are no disputes regarding personal jurisdiction or venue in this matter. After briefing on the matter, this Court retained jurisdiction of this case by order dated February 17, 2020. ECF No. 66. Defendants believe that there is no subject matter jurisdiction because Defendants are entitled to derivative sovereign immunity from suit.

Defendants have been served.

**2. Factual Background of Action**

**Plaintiffs' Position:** Plaintiffs bring a putative class action under Fed. R. Civ. Proc. Rule 23 on behalf of all owners of real property in Sonoma, Lake, Mendocino, and Napa Counties land contractors overseen, directed, or monitored by ECC and Tetra Tech performed cleanup work in relation to wildfire damage from October 2017 to the present. Plaintiffs contend that Defendants improperly removed excessive amounts of uncontaminated soil, structures, vegetation, or other land or materials.

Plaintiffs allege that ECC was contracted by the U.S. Army Corps of Engineers ("USACE") to manage contractors' recovery efforts following the North Bay Fires. Specifically, Plaintiffs allege that ECC was responsible for performing initial site reconnaissance and individual site assessments; monitoring air quality and preventing storm water pollution; segregating ash, metals, and concrete for transport to appropriate disposal for recycling facilities; finishing surfaces and removing topsoil; removing trees; and testing soil for contamination. Plaintiffs allege that ECC contracted Tetra Tech to monitor and direct portions of the work.

Plaintiffs allege that during the course of Defendants' debris removal, Defendants improperly removed excessive amounts of soil, structures, vegetation, or other land or materials,

2

UPDATED JOINT CASE MANAGEMENT CONFERENCE STATEMENT

57137665.v1

all of which were unaffected and uncontaminated by the wildfires. Plaintiffs also allege that Defendants left contaminated soil and debris on Plainintffs' and putative class members' properties. As a result, Plaintiffs allege they incurred and will continue to incur significant costs to backfill their land and remedy costs associated with the unnecessary removal of trees from their properties.

**ECC's Position**:

Defendant ECC is a business involved in providing, *inter alia*, certain debris management services. Defendant ECC admits that it contracted with the United States Army Corps of Engineers to enter onto certain private properties affected by the Northern California Wildfires to provide certain services including initial site reconnaissance, individual site assessments, air quality monitoring, storm water pollution prevention, segregation of vehicles, ash, metals, and concrete for disposal or recycling, debris removal, reduction if necessary, hauling, and disposal from such private properties, finishing surfaces, tree removal, conducting confirmation sampling, and other services. Defendant ECC also admits it entered into a contract with Defendant Tetra Tech to provide certain services in connection with the cleanup work performed at properties affected by the Northern California Wildfires. However, Defendant ECC denies Plaintiffs' remaining allegations including, without limitation, Plaintiffs' allegations of improper and wrongful conduct. Defendant ECC denies it is liable for Plaintiffs' damages. The principal factual issues in dispute include, without limitation, Defendant ECC's scope of work; the work, if any, Defendant ECC and other entities performed on the Plaintiffs' properties; whether Defendant ECC removed excessive amounts of soil, trees, land, structures, etc.; whether Defendant Tetra Tech or other entities monitored, supervised, inspected, or directed the work of ECC or other entities; whether Plaintiffs (or the putative class) sustained damage to property, and other factual issues relating to class certification.

ECC maintains that it entered into a contract with the USACE, and at all times performed its work in accordance with the terms of that contract and USACE directives.

57137665.v1

**Tetra Tech's Position**: Defendant Tetra Tech is a business involved in providing consulting and engineering services. Defendant Tetra Tech denies Plaintiffs' allegations in their entirety. Tetra Tech maintains that at all times it performed its work in accordance with the terms of the prime contract and subcontract with AshBritt and USACE directives. The principal factual issues in dispute include but are not limited to, whether Defendant Tetra Tech was following the terms of the master contract and directives of the USACE; whether Defendant Tetra Tech was responsible in any way for the removal of debris, soil or property; whether, if so, excessive amounts of soil, structures, land, etc. were, in fact, removed from any property; whether Defendant Tetra Tech monitored, supervised, inspected or directed the work of ECC or other subcontractor Defendants in the removal of debris, soil or property; whether Plaintiffs' (or the putative class) sustained damage to property, and other factual issues relating to class certification.

3. **Legal Issues**

Plaintiffs allege that Defendants' actions constituted unlawful and unfair business practices in violation of California Business and Professions Code §§ 17200, *et seq*. (the Unfair Competition Law or "UCL"). Plaintiffs also allege that Defendants' actions constituted trespass, conversion, and trespass to chattels.

In addition to the disputed legal issues identified in the preceding paragraph and those affirmative defenses listed in Defendants' answers, Defendants anticipate at least the following legal issues:

1. Whether the derivative sovereign immunity doctrine bars Plaintiffs' action;
2. Whether the doctrine of consent or waiver bars Plaintiffs' recovery;
3. Whether Defendants are liable under California's Unfair Competition Law;
4. Whether Defendants are liable for the various property torts alleged by Plaintiffs; and
5. Whether the putative class can be certified under Rule 23(b)(3).

57137665.v1

**4. Motions**

**Prior Motions**

1. Defendants' Motions to Strike Class Allegations, ECF Nos. 50 and 52, were granted in part, with leave to amend. ECF No. 66. On March 4, 2020, Plaintiffs filed their Third Amended Complaint. ECF No. 68. Defendants answered that Third Amended Complaint on April 16 and 17, 2020. ECF Nos. 75, 76.

**Pending Motions:**

There are no pending motions.

**Anticipated Motions:**

1. Defendants anticipate filing a motion to dismiss pursuant to Rule 12(b)(1) on the issue of derivative sovereign immunity, which Defendants believe precludes any liability in this case and results in this Court lacking subject matter jurisdiction of this action. *See Yearsley v. W.A. Ross Construction*, 309 U.S. 18 (1940); *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988); *Myers v. United States*, 323 F.2d 580 (9th Cir. 1963); *Perkins v. United States*, 1:07cv1185 LG-RHW, 2009 U.S. Dist. LEXIS 75688 (S.D. Miss. Aug. 21, 2009). ). Plaintiff's position is that the doctrine of derivative sovereign immunity is inapplicable here because, as alleged in the operative complaint, Defendants exceeded the scope of their authority when they removed excessive soil and trees, and failed to properly test and remove contaminated soil, ash, and debris, from putative class members' properties. *See Yearsley*, 309 U.S. at 21. Defendants are seeking to establish a schedule for adjudication of this potentially dispositive motions relating to the Court's subject matter jurisdiction for this action will meet-and-confer with Plaintiffs regarding an appropriate scope for discovery and a corresponding schedule.

2. In the event Defendants' motion to dismiss on the issue of derivative sovereign immunity is not successful, Defendants may later file motions for summary judgment on certain causes of action asserted by Plaintiff and/or affirmative defenses.

57137665.v1

3. Plaintiff intends to move to certify his proposed class. Plaintiff agrees to meet and confer with Defendants regarding a schedule for class certification following the Court's decision on Defendants' 12(b)(1) motion.

**5. Amendment of Pleadings**

On March 4 2020, Plaintiff filed his Third Amended Complaint. ECF No. 68. Defendants answered that Third Amended Complaint on April 16 and 17, 2020. ECF Nos. 75, 76. No new plaintiffs were added to the Third Amended Complaint. The deadline to further amend the pleadings has passed.

**6. Evidence Preservation**

The parties are aware of and are taking steps to comply with their evidence preservation obligations under the Federal Rules of Civil Procedure and the Northern District of California's ESI Guidelines.

**7. Disclosures**

The Parties have made their initial disclosures pursuant to Rule 26(a).

**8. Discovery**

Plaintiffs and Tetra Tech held their Rule 26(f) conference on February 13, 2019. ECC appeared in the case on March 22, 2019 and consented to proceed before a magistrate judge in this case on April 9, 2019. Plaintiffs and ECC conducted a conference that they considered to be their Rule 26(f) conference on May 22, 2019.

A. Scope of Anticipated Discovery

**Plaintiffs' Position**: In light of Defendants' intention to file a motion to dismiss under the doctrine of derivative sovereign immunity, Plaintiff agrees to discuss limiting discovery to that issue. To that end, Plaintiff believes that *some* classwide discovery will be necessary to adjudicate derivative immunity, as the question of whether Defendants exceeded the scope of their contractual authority may be answered through uniform, classwide policies regarding Defendants' performance of work during the cleanup project.

**Defendants' Position**:

As discussed above and below in the discovery plan, Defendants believe the derivative sovereign immunity issue should be the focus of discovery. Specifically, that would focus discovery on the specific work done at Plaintiffs' properties. Under derivative sovereign immunity, Defendants are immune from suit if they followed the terms of the USACE task orders and directives with regard to their cleanup work on Plaintiffs' properties. Defendants are willing to engage in an informal mutual exchange of information and documents relating to the work and testing done on Plaintiffs' property, including that done by Defendants and that allegedly undertaken by Plaintiffs. The results of that exchange of information and documents will dictate what further formal discovery is necessary to adjudicate the derivative sovereign immunity issue.

B. Limitations or Modifications of Discovery Rules

Plaintiffs anticipate the need to increase the number of permitted depositions up from ten (10) to fifteen (15) and the number of permitted interrogatories, although a specific number has not yet been determined.

Defendants do not anticipate a need to modify the limitations on discovery relief for the limited discovery related to the derivative sovereign immunity defense, but do anticipate the expected number of depositions may eventually require an order allowing more than 10 depositions.

C. ESI Protocol and Stipulated Protective Order:

The parties have agreed to adopt the stipulated Protective Order based upon the Northern District of California Model Order. The parties have also agreed in principle to adopt the Northern District of California's model stipulated order regarding ESI but need to further meet and confer to discuss the specific parameters and terms of the proposed order after the scope of the claims properly asserted in this action are further refined and resolved by the Court.

D. Rule 26(f) Discovery Plan

This subsection discusses the schedule for discovery as required under Rule 26(f)(B). All other reportable views and proposals under Rule 26(f) are discussed throughout Section 8(A)-(E) of this Case Management Statement in accordance with the Standing Order for all Judges of the Northern District of California – Contents of Joint Case Management Statement.

The parties conducted what they considered to be there Rule 26(f) conference on May 22, 2019.

**Plaintiffs' Position:** As discussed above and below, the Parties are engaged in meeting and conferring to exchange discovery and narrow the scope of discovery already served on Defendants. Plaintiff's position is that 30(b)(6) depositions will be necessary to adjudicate the issue of derivative sovereign immunity. Plaintiff intends to discuss the scope and schedule of these depositions as a part of ongoing discussions with Defendants.

**Defendants' Position:**

Defendants believe that discovery should initially focus on the issue as to whether Plaintiffs' suit will be barred because Defendants are entitled to derivative sovereign immunity for work they performed at Plaintiffs' properties. Under the derivative sovereign immunity doctrine, Defendants are immune from suit if they followed the terms of the USACE task orders and directives regarding the cleanup work undertaken by Defendants. *See Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672 (2016).

Defendants' proposed schedule would permit the parties to engage in discovery regarding Defendants' entitlement to derivative sovereign immunity and allow the Court to rule on a jurisdictional motion before proceeding with discovery on class certification and liability. Defendants also stress that the COVID-19 pandemic, which significantly increases discovery burdens, favors measures to economize discovery and reduce intrusiveness on the public.

E. Anticipated Discovery Disputes

**Plaintiffs' Position**:

As discussed above, Plaintiffs agree to limit discovery to the issue of derivative sovereign immunity. To that end, Plaintiffs believe that some classwide discovery will be necessary to adjudicate derivative immunity, as the question of whether Defendants exceeded the scope of their contractual authority may be answered through uniform, classwide policies or communications regarding the performance of work during the cleanup project.

Plaintiffs' counsel has obtained complaints from several hundred property owners in Sonoma and Napa counties relating to the debris cleanup project at issue in this case. Many of these complaints are expressly directed towards conduct by Defendants ECC and Tetra Tech and echo Plaintiffs' allegations of overexcavation and failure to test and/or remove contaminated soil and debris from the properties of putative class members. Plaintiffs will meet and confer with Defendants regarding mutual exchange of information related to the complaints of these putative class members.

While the putative class member complaints in Plaintiffs' possession do not constitute an exhaustive list of putative class members, Plaintiffs are willing to discuss limiting classwide discovery to these properties, or some subset of these properties, in determining whether Defendants exceeded their authority during the cleanup project such that the doctrine of derivative sovereign immunity does not apply.

For the reasons above, Plaintiffs do not agree that discovery at this stage should be limited to only Plaintiffs' properties. Plaintiffs are engaged in the meet-and-confer process with Defendants regarding limitations on discovery.

**Defendants' Position**: Defendants have started the meet-and-confer process regarding the scope of potential discovery in this matter, particularly in light of Defendants' intention to seek to limit discovery to the issue of sovereign derivative immunity. Defendants do not believe broad class discovery is appropriate in this case, particularly in light of the privacy rights and potential and actual conflicts that arise in Plaintiffs seeking information about third party property owners

9

UPDATED JOINT CASE MANAGEMENT CONFERENCE STATEMENT
57137665.v1

who are represented by other counsel in litigation relating to property damage arising out of the 2017 wildfires.

Defendants note that counsel for Plaintiffs appear to also represent upwards of 40 individuals whose properties were damages and/or destroyed by the North Bay Fires in lawsuits against PG&E. Plaintiffs' counsel also recently suggested that between 10 and 50 clients have suggested they may have complaints with regard to USACE-authorized cleanup, some of whom might be willing to join one of these related actions as named plaintiffs (although the deadline to amend has passed), and others who apparently wish to remain anonymous to protect their privacy. Defendants are willing to engage in discussions to address the possibility of informally exchanging information with regard to these other unidentified property owners.

**9. Class Actions**

**Plaintiffs' Position:**

Plaintiffs seek certification of a California State class. The class sought to be represented is defined as follows:

> All owners of real property in Sonoma, Lake, Mendocino, and Napa Counties on whose land [contractors overseen, directed, or monitored by ECC and Tetra Tech] performed cleanup work in relation to wildfire damages from October 2017 to the present.

Plaintiffs will seek certification under Rule 23(b)(3) of the Federal Rules of Civil Procedure. The Plaintiffs contend that they are entitled to maintain the action as a class action under Rule 23(a) and (b) based upon the facts set forth in Section 2, *supra*, and in addition because common questions of law and fact predominate, including (but not limited to):

   a. Whether Defendants trespassed onto Plaintiffs' real property, thereby causing damages to the land;
   b. Whether Defendants interfered with the possessory rights of Plaintiffs' personal property;
   c. Whether Defendants' conduct violated Business and Professions Code §§ 17200, *et seq*.;
   d. Whether Defendants' conduct otherwise violated California law;

  e. Whether Defendants are jointly or severally liable or otherwise legally responsible for violations alleged herein under an agency or other theory; and

  f. Whether, as a result of Defendants' misconduct, Plaintiffs are entitled to damages, restitution, equitable relief, or other damages and relief, and, if so, the amount and nature of such relief.

  Plaintiffs' position is that a class action is superior to all other available methods for the fair and efficient adjudication of this controversy because, *inter alia*, it is economically impractical for members of the Class to prosecute individual actions, the Class is readily definable, prosecution as a class action will eliminate the possibility of repetitious litigation, and a class action will enable claims to be handled in an orderly and expeditious manner, will save time and expense, and will ensure uniformity of decisions. Plaintiffs will meet and confer with Defendants regarding a schedule for class certification following the Court's decision on Defendants' derivative sovereign immunity motion.

  **Defendants' Position**:

  Defendants do not believe that this case is appropriate for class action treatment. As discussed above, Defendants propose that the current litigation and efforts of the parties focus on the Defendants' entitlement to derivative sovereign immunity from suit.

  Further, Defendants maintain that a review of the operative Third Amended Complaint discloses that Plaintiffs cannot establish the requisite elements for class certification. For instance, Defendants note that a class action is not superior to other available methods for the fair and efficient adjudication of the controversy and joinder of all members of the Class is not impracticable—the pending PG&E coordinated litigation in San Francisco Superior Court (JCCP No. 4955), in which Plaintiffs and their counsel have filed complaints, demonstrates how a class action is not a superior method and that joinder is not impracticable. Moreover, the fact that Plaintiffs' counsel have filed what appears to be approximately 40 individual complaints in the PG&E action on behalf of individual property owners but have not done so here, demonstrates that Plaintiffs' proposed class of all property owners who had work done by Defendants is manifestly overbroad and that the class is not ascertainable, that Plaintiffs' claims are not typical

and they are not adequate representatives, that individual issues will predominate over the allegedly common issues (which Defendants dispute) and that management of this action on a class-wide basis is not practical. This further supports Defendants' proposal to initially focus discovery on the issue of derivative sovereign immunity.

Setting aside these various objections, Defendants believe that Plaintiffs' schedule is unrealistic.

### 10. Related Cases

On March 11, 2019, this Court granted a stipulated order relating this case to *Mason, et al. v. Ashbritt, Inc., et al*, No. 3:19-cv-01062-LB ("*Mason*").

### 11. Relief

**Plaintiffs' Position:** Plaintiff seeks actual and compensatory damages, treble damages, restitution and disgorgement, civil and statutory penalties, attorneys' fees and costs, and prejudgment and post-judgment interest. Plaintiffs contend that damages will be calculated based on the value of soil and trees removed from putative class members' properties, the cost to remediate Defendants' alleged over-excavation of the land, and the depreciation in value of putative class members' properties as a result of Defendants' alleged actions.

**Defendants' Position:** Defendants deny liability to Plaintiffs, and believe that this case should be resolved on a motion to dismiss on the basis of Defendants' derivative sovereign immunity. Defendants contend that Plaintiffs waived their claims against the Defendants in the Right-of-Entry Permits the Plaintiffs executed prior to the remediation work on their respective properties. However, if any such liability exists, Plaintiffs damages should be limited to a reasonable and actual recoverable monetary amount upon submission of proper evidentiary proof. Defendants also note that, to the extent liability is established, expert testimony will be required to assess what damages are attributable to the alleged over-excavation (or under-excavation) at Plaintiffs' respective properties (and separately as to any other property) versus that which was necessarily undertaken as part of the remediation to which Plaintiffs consented, and also

segregating that damage that is properly allocated to PG&E as a result of its responsibility for the underlying cause of the property damage, e.g., the wildfires.

### 12. Settlement and ADR

Plaintiff believes that reputable news coverage and publicized communications from the California Office of Emergency Services corroborate Plaintiff's allegations, and, along with information obtained during Plaintiff's counsel's investigation, are sufficient to position the Parties to negotiate a global resolution. The working relationship between Plaintiff's and Defendants' counsel in the ongoing process of narrowing the scope of formal and informal discovery leads Plaintiff to further believe that the Parties will be able to negotiate an early resolution.

Defendants currently believe that the parties' differences regarding the fundamental legal and factual issues in this case, and Plaintiffs' insistence on broad discovery regarding every property for which Defendants or any of their subcontractors performed worked, including confidential, proprietary and protected third party information, make early ADR impractical. Defendants are however, willing to discuss with Plaintiff and the Court the advisability of ADR at the May 20, 2020 Case Management Conference.

### 13. Consent to Magistrate Judge For All Purposes

The parties have consented to have this matter determined by a Magistrate Judge for all purposes.

### 14. Other References

The parties do not believe that this case is suitable for reference to binding arbitration, a special master, or the Judicial Panel on Multidistrict Litigation at this time.

### 15. Narrowing of Issues

As discussed above and as reflected in the proposed schedule below, Defendants believe that this case should be narrowed to first address Defendants' assertion of derivative sovereign immunity, which would include a mutual exchange of information and documents, followed by a

57137665.v1

phased approach to permit appropriate discovery and briefing before proceeding onto any class or merits-based discovery.

Plaintiff agrees to work with Defendant on limiting discovery at this stage but notes that the issue of derivative sovereign immunity is inextricably tied to the theory of liability in this case and, as discussed above, will require some degree of classwide discovery.

**16. Expedited Schedule**

At this time the parties do not believe that a discussion of expedited scheduling procedures is necessary.

**17. Scheduling**

The Parties have been meeting-and-conferring about a discovery and briefing schedule related to the scope and timing of the issue of derivative immunity and request that the Court set a further case management conference to discuss scheduling and briefing deadlines on June 17, 2020, or soon thereafter as is practicable for the Court.

**18. Trial**

**Plaintiffs' Position:** The case will be tried to a jury and Plaintiffs believe the trial would last two weeks. will propose a trial date following adjudication of the issue of derivative sovereign immunity.

**Defendants' Position:** No determination regarding the length of trial can be made until the issues of derivative sovereign immunity, and, if necessary, class certification, are resolved.

**19. Disclosure of Non-party Interested Entities or Persons**

The parties have all filed the Certification of Interested Entities or Persons required by Civil Local Rule 3-15.

**20. Professional Conduct**

At this time, counsel for the parties have reviewed the Guidelines for Professional Conduct for the Northern District of California.

**21. Other Matters**

Given that community circulation of the novel coronavirus (SARS-CoV-2) may continue through the end of this year and beyond, Plaintiff intends to meet and confer with Defendants regarding stipulated procedures for remote depositions in this matter.

Dated: May 13, 2020                THE ARNS LAW FIRM

                                   By  /s/ Shounak S. Dharap
                                   Robert S. Arns
                                   Jonathan E. Davis
                                   Shounak S. Dharap

                                   Attorneys for Plaintiffs

Dated: May 13, 2020                NOSSAMAN LLP

                                   By  /s/ James H. Vorhis
                                   James H. Vorhis
                                   Jill N. Jaffe

                                   Attorneys for Defendant
                                   TETRA TECH, INC.

Dated: May 13, 2020                COZEN O'CONNOR

                                   By  /s/ Andrew M. Hurchison
                                   Andrew M. Hutchison
                                   David A. Shimkin

                                   Attorneys for Defendant
                                   ENVIRONMENTAL CHEMICAL
                                   CORPORATION dba ECC
                                   REMEDIATION SERVICES